UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

Kristina R. o/b/o K.M.M..,[1]

Plaintiff,

v.

Kilolo Kijakazi,

Defendant.

Case No. 2:24-cv-00202-BNW

**ORDER**

This case involves review of an administrative action by the Commissioner of Social Security denying Plaintiff's application, on behalf of her minor child, K.M.M., for child supplemental security income under Title XVI of the Social Security Act. In Plaintiff's opening brief, she asks this Court to reverse the Commissioner's decision or, in the alternative, remand for further proceedings. ECF No. 18. The Commissioner opposed, requesting that this Court affirm its decision. ECF No. 22. Plaintiff replied at ECF No. 23. For the reasons discussed below, the Court grants in part and denies in part Plaintiff's motion, denies the Commissioner's motion, and remands for further proceedings.

**I.     BACKGROUND**

Plaintiff first filed for child-social-security income on behalf of her daughter in January of 2021. Administrative Record ("AR") 17, 111. The Commissioner denied Plaintiff's application initially and upon reconsideration. AR 17. Plaintiff then appeared at a hearing on behalf of K.M.M. before an Administrative Law Judge ("ALJ"). AR 31–49. The ALJ found that K.M.M. was not disabled under C.F.R. § 416.926(a). AR 25. The Appeal's Council declined to review this decision. AR 1. Consequently, Plaintiff appealed to this Court.

**II.     STANDARD OF REVIEW**

Administrative decisions in Social Security disability-benefits cases are reviewed under

---

[1] In the interest of privacy, this opinion only uses initials for the minor child and the first name and last initial of the nongovernmental party.

42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which [s]he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." 42 U.S.C. § 405(g). The Court may enter "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See id.*; *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the Court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F. 3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). When the evidence supports more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health & Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, the issue before the Court is not whether the Commissioner could have reasonably reached a different conclusion,

but whether the final decision is supported by substantial evidence. *Burch*, 400 F.3d at 679. It is incumbent on the ALJ to make specific findings so that the Court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are not sufficient. *Id.* The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

### A. Disability evaluation process and the ALJ decision

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The individual also must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514.

The ALJ follows a three-step sequential process to determine whether a child under the age of eighteen is disabled and thus entitled to benefits. 20 C.F.R. § 416.924(a). First, the ALJ must determine whether the child is engaged in substantial gainful activity. *Id.* § 416.924(b). Second, the ALJ considers whether the child has a "medically determinable impairment that is severe," which is defined as an impairment that causes "more than minimal functional limitations." *Id.* § 416.924(c). Third, if the ALJ finds a severe impairment, the ALJ must then consider whether the impairment "medically equals" or "functionally equals" a disability listed in the "Listing of Impairments." *Id.* § 416.924(c)–(d).

If the ALJ finds the child's impairment or combination of impairments does not meet or medically equal a listing, the ALJ must determine whether the impairment or combination of impairments functionally equals a listing. *Id.* § 416.926a(a). The ALJ's functional-equivalence

1    assessment requires the ALJ to evaluate the child's functioning across six domains: (1) acquiring

2    and using information; (2) attending and completing tasks; (3) interacting and relating with

3    others; (4) moving about and manipulating objects; (5) caring for self; and (6) health and

4    physical well-being. *Id.* § 416.926a(a)-(b). A child's impairment functionally equals the listing

5    when the child has "marked" limitations in two domains, or an "extreme" limitation in one

6    domain. *Id.* § 416.926a(d). An impairment is a "marked limitation" if it "interferes seriously with

7    [a person's] ability to independently initiate, sustain, or complete activities." *Id.*

8    § 416.926a(e)(2)(i). By contrast, an "extreme limitation" is a limitation that "interferes *very*

9    seriously with [a person's] ability to independently initiate, sustain, or complete activities." *Id.*

10   § 416.926a(e)(3)(i) (emphasis added).

11       *Here,* the ALJ followed the three-step evaluation process set forth in 20 C.F.R.

12   § 416.924(a). AR 17–25.

13       At step one, the ALJ found that K.M.M. had not engaged in substantial gainful activity

14   since her application date. AR 18.

15       At step two, the ALJ found that K.M.M. had severe impairments of a learning disability

16   and obesity. *Id.*

17       At step three, the ALJ found that K.M.M. did not have an impairment or combination of

18   impairments that met or medically equaled the severity of one of the listed impairments in 20

19   C.F.R. Part 404, Subpart P, Appendix 1. AR 18–19. The ALJ further found that K.M.M. did not

20   have an impairment or combination of impairments that functionally equaled the severity of the

21   listings in 20 C.F.R §§ 416.924(d), 416.926a. AR 20–25. In reaching this finding, the ALJ found

22   that K.M.M. had less than a marked limitation across all six childhood domains. AR 20.

23   Therefore, the ALJ concluded that K.M.M. was not disabled. AR 25.

24   / / /

25   / / /

26   / / /

27   / / /

28                                            4

1    III.    ANALYSIS

2        **A. The ALJ did not err in rejecting Dr. Rubin's medical opinion as to listings**
3        **112.11 and 112.05.**

4        In early 2023, months after the hearing, the ALJ questioned Stephen Rubin, M.D., via

5    written interrogatories. ECF No. 22 at 5; AR 548. Both Plaintiff and the Commissioner agree that

6    Dr. Rubin's answers to these interrogatories were inconsistent. ECF No. 18 at 4; ECF No. 22 at

7    5. Dr. Rubin found that K.M.M.'s impairments met listings 112.05 and 112.11 but later stated

8    that she had less than marked limitations or no limitations in the six childhood domains of

9    functioning. AR 551–54. The ALJ found his opinion regarding the listings unpersuasive. AR 24.

10        Plaintiff argues that the ALJ erred in finding Dr. Rubin's opinion regarding the listings

11    unpersuasive because she did not seek further clarification. ECF No. 18 at 5–6. First, Plaintiff

12    suggests that the ALJ ordered the interrogatories as a remedial action, and that, by not seeking

13    clarification from Dr. Rubin, the ALJ failed to apply sound legal principles under *Oakes v.*

14    *Kijakazi*. *Id.* (citing 70 F.4th 207, 213–14 (4th Cir. 2023)). Second, Plaintiff argues that the ALJ

15    had a duty to develop the record because Dr. Rubin's answers constituted ambiguous evidence.

16    *Id.* at 6 (citing *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001)).

17        The Commissioner responds that the ALJ properly evaluated Dr. Rubin's medical

18    opinion by specifically considering the supportability and consistency of his opinion. ECF No.

19    22 at 6. For example, the Commissioner explains that the ALJ found that Dr. Rubin's opinion

20    that K.M.M. met listings 112.05 and 112.11 lacked significant support because he did not

21    address the specifics of those listings and was uncertain if K.M.M. had a general cognitive

22    defect. *Id.* Further, the Commissioner argues that the ALJ found that Dr. Rubin's opinion

23    regarding the listings was not consistent, as explained above. *Id.* at 7.

24        Additionally, the Commissioner disagrees with Plaintiff's first argument that the ALJ

25    needed to clarify Dr. Rubin's opinion. *Id.* He explains that the ALJ only needs to recontact a

26    medical source if "after considering the evidence [ the ALJ] cannot reach a conclusion about

27    whether [the claimant is] disabled," which was not the case here. *Id.* (quoting 20 C.F.R.

28                                        5

1   § 416.920b(b)(2)). The Commissioner also disagrees with Plaintiff's second argument that the

2   ALJ needed to develop the record because Dr. Rubin's testimony was ambiguous. *Id.* at 8. Citing

3   *Bayliss v. Barhart*, the Commissioner explains that the Ninth Circuit has found that "the fact that

4   a doctor's medical opinion contradicted clinical notes he made the same day . . . did not result in

5   an ambiguous or insufficient report triggering a need to recontact the doctor." *Id.* (citing 427

6   F.3d 1211, 1216 (9th Cir. 2005)).

7           Plaintiff replies that Dr. Rubin's interrogatory answers were ambiguous because the non-

8   attorney representative interpreted the answers differently (that is, in favor of K.M.M.), and thus

9   required the ALJ to develop the record. ECF No. 23 at 1–2. Plaintiff also claims that *Bayliss* is

10  distinguishable because that case dealt with a treating or examining physician as opposed to a

11  non-examining, non-treating physician like Dr. Rubin. So, Plaintiff argues that *Bayliss* required

12  the ALJ to make Dr. Rubin clarify his opinion. *Id.* at 2.

13          The Court finds that the ALJ did not err in not seeking further clarification from Dr.

14  Rubin. As an initial matter, the Court agrees with the Commissioner that ALJ's finding was

15  supported by substantial evidence.[2] The Court further finds that the ALJ did not have a duty to

16  seek further clarification or develop the record regarding Dr. Rubin's inconsistent opinion.

17          In *Oakes*, the Fourth Circuit found that the ALJ should have taken additional actions to

18  seek clarification because the medical record was "extremely sparse" and incomplete. 70 F.4th

19  207, 213. It relied on the following language from 20 C.F.R. § 404.1520b(b)(3) in reaching this

20  conclusion: "When there are inconsistencies in the evidence that we cannot resolve or when,

21  despite efforts to obtain additional evidence, the evidence is insufficient to determine whether [a

22

23  _____

    [2] When evaluating medical opinions, the ALJ considers whether the opinions are supported by
24  and consistent with other evidence. 20 C.F.R. § 416.920c(c). Here, the ALJ, in considering Dr.
    Rubin's medical opinions in the interrogatories, explicitly stated that his opinion was inconsistent.
25  AR 24. She explained that his notations in the interrogatories did not address any of the specifics
    in listings 112.05 and 112.11, and that "one IEP he considered indicated that [K.M.M.'s] strength
26  was math and that he was uncertain if there was a general cognitive deficit." *Id.* She further
    explained that his opinion that K.M.M. met listings 112.05 and 112.11 was not supported by
27  objective evidence in the record. *Id.* Based on these reasons, the ALJ concluded that this part of
    Dr. Rubin's opinion was unpersuasive. *Id.*

28                                                  6

claimant is] disabled, we will make a determination or decision based on the evidence we have." Here, nothing in the record suggests that the ALJ could not resolve the inconsistency in Dr. Rubin's opinion or that the evidence in the record was insufficient to determine that K.M.M. was disabled. Moreover, nothing in the record suggests that evidence is sparse or incomplete. Therefore, the Court finds that the ALJ was not required to seek clarification from Dr. Rubin based on *Oakes*, as Plaintiff contends.

Additionally, in *Bayliss*, the Ninth Circuit stated that "[a]n ALJ is required to recontact a doctor only if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination." 427 F.3d 1211, 1217 (9th Cir. 2005). The court cited *Thomas v. Barnhart* for this proposition. 278 F.3d 947, 957 (9th Cir. 2002). In *Thomas*, the Ninth Circuit explicitly found that the requirement to recontact a doctor only applied to a "treating" source. *Id.* at 958. Here, Dr. Rubin is not a treating physician, as Plaintiff points out. ECF No. 23 at 1–2. So, the Court finds *Bayliss* unpersuasive based on the treating versus non-treating distinction. Therefore, the ALJ did not err in not seeking clarification from non-treating physician Dr. Rubin.

### B. The ALJ erred in rejecting Plaintiff's subjective-symptom testimony and failing to consider that K.M.M. spent most of her day in a self-contained classroom.

Plaintiff generally argues that the ALJ's decision regarding K.M.M.'s ability to (1) understand, remember, and apply information and (2) interact with others was not supported by substantial evidence because the ALJ failed to consider, or did not properly consider, key pieces of evidence. ECF Nos. 18, 23. For ease of analysis, the Court breaks Plaintiff's argument into five issues: (1) the agency opinion; (2) the 112.11 listing; (3) Plaintiff's testimony; (4) K.M.M.'s teacher's opinion; and (5) the self-contained classroom.

#### 1. The agency opinion

First, the Court rejects Plaintiff's argument that the ALJ erred by giving persuasive weight to an agency opinion that did not consider the 2022 IEP. An ALJ is not required to discuss every piece of evidence in the record. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984). Also, an ALJ may choose to give more weight to an opinion that

is more consistent with the evidence in the record. 20 C.F.R. § 416.927(c)(4) ("[T]he more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."); *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996).

Here, the ALJ considered the agency opinion more persuasive because it was more consistent with the record as a whole. AR 24. The agency opinion found less than marked limitations in four domains and no limitations in two domains. *Id.* The ALJ found this more persuasive than another opinion that only found less than marked limitations in three domains because, as the ALJ explained, the record did not support finding no limitations in the remaining domains. *Id.* Importantly, the ALJ concluded that the degree of limitations stated in the agency opinion were "consistent with the evidence discussed above" and more supported by the record. *See id.* Additionally, the ALJ did discuss the 2022 IEP throughout her decision. *See, e.g.*, AR 22. Therefore, the Court will not conclude that the ALJ erred merely because she gave some persuasive weight to an agency opinion that did not consider one specific piece of evidence, particularly when the ALJ had previously considered this evidence.

### 2.   Listing 112.11

Second, the Court rejects Plaintiff's argument that the ALJ failed to consider listing 112.11. It finds that the ALJ did consider this listing, and even if she didn't, such error was harmless. In evaluating Dr. Rubin's opinion, the ALJ noted that he opined that K.M.M. met listings 112.11 and 112.05. AR 24. The ALJ went on to state that "the opinion that the claimant meets either of these Listings is not supported by the objective evidence in the record as discussed above and below." *Id.* Therefore, the ALJ considered whether the evidence supported finding that K.M.M. met listing 112.11 and 112.05.

Moreover, even if the ALJ did not properly consider listing 112.11, such error would be harmless because the ALJ considered listing 112.02. Both listing 112.11 and 112.02 require the claimant to satisfy four criteria under paragraph B. 20 C.F.R. 404, Appendix 1 to Subpart P, § 112.11(b). In considering listing 112.02, the ALJ evaluated the paragraph-B criteria and found that K.M.M. did not have marked limitations in these areas. AR 19. Because listing 112.11

1    requires the claimant to meet the same paragraph-B criteria, and because the ALJ found that

2    K.M.M. did not meet these criteria, the ALJ would have reached the same conclusion that

3    K.M.M. was not disabled under listing 112.11. Therefore, even if the ALJ erred, such error was

4    harmless.

5               *3.   Plaintiff's subjective-symptom testimony*

6               Third, the Court agrees with Plaintiff that the ALJ did not properly consider her

7    testimony. It finds that the ALJ erred in rejecting Plaintiff's testimony that K.M.M. (1) struggled

8    in math and (2) struggled when interacting with others. ECF No. 18 at 10–12. The ALJ found

9    that, while the objective medical evidence demonstrated impairments that "could reasonably be

10   expected to cause the alleged symptoms," the evidence was not entirely consistent with the

11   "intensity, persistence, and limiting effects" of Plaintiff's testimony. AR 21. The ALJ can reject

12   the claimant's testimony about the severity of their symptoms "only by offering specific, clear,

13   and convincing reasons for doing so." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)

14   (internal citation and quotation omitted) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36

15   (9th Cir. 2007)). General findings are insufficient; rather, the ALJ must identify what symptom

16   claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v.*

17   *Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th

18   Cir. 2002) (requiring the ALJ to sufficiently explain why they discounted the claimant's

19   symptom claims). "The clear and convincing [evidence] standard is the most demanding required

20   in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting

21   *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

22               The Court first considers the testimony regarding math. At the hearing, Plaintiff testified

23   that: "[K.M.M.] can only add and subtract. She can't do multiplication or division and she has a

24   hard time with that when it gets into higher numbers." AR 41. She also testified that K.M.M.

25   likes math and does well for her age. *Id.* In the decision, the ALJ stated that Plaintiff's testimony

26   "downplayed the claimant's strength in math." AR 21. In rejecting this testimony, the ALJ

27   explained that the 2022 IEP lists math among K.M.M.'s academic strengths and shows that she is

28                                                  9

average in math, measuring at a level equal to or better than 18% of her peers, and has improved. AR 21–22. However, the 2022 IEP also shows that K.M.M. is only in the second percentile for math and has a "difficulty in the area of math." AR 485. The 2022 IEP further states that K.M.M.'s "knowledge of math concepts and their applications was measured in the below average range." *Id.* It also stated that K.M.M. "had no difficulty solving any single-digit numbers" but did have difficulty with multiple-digit numbers and multiplication and division problems. *Id.* This supports Plaintiff's above testimony that K.M.M. had trouble with multiplication and division and higher numbers. Therefore, the Court does not find that the ALJ's reasons for rejecting Plaintiff's testimony regarding math meet the "most demanding" evidence standard because the 2022 IEP does not clearly and convincingly undermine the testimony that K.M.M. had difficulty in math.

The Court next considers the testimony regarding interacting with others. At the hearing, Plaintiff testified that: "[K.M.M.] is seldom hanging out with friends or schoolmates because she tends to have emotional outbursts and to be five minutes behind whatever they're talking about and they kind of perceive her as awkward. She feels uncomfortable and says she can't maintain friendships very long." AR 40. In evaluating the domain of interacting and relating to others, the ALJ did not address Plaintiff's testimony or explain how the evidence she cited undermined this testimony. AR 22. While the ALJ did previously acknowledge Plaintiff's testimony that K.M.M. "is perceived as awkward and has difficulty maintaining friendships," the ALJ discounted this testimony by generally stating that "the allegations concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 21. This does not meet the clear-and-convincing-evidence standard. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). Therefore, the ALJ did not properly reject Plaintiff's testimony regarding K.M.M.'s interactions with others.

### 4. The teacher's opinion testimony

Fourth, the Court partially agrees with Plaintiff that the ALJ improperly weighed the teacher's opinion testimony. Plaintiff argues that the ALJ "dimishe[d]" K.M.M. teacher's

opinion, which suggested that K.M.M. struggled in understanding, remembering, and applying information; and interacting with others. ECF No. 18 at 11. Plaintiff also points out that the ALJ "deferred to the IEP report over that of K.M.M.'s primary teacher." *Id.* at 12. Plaintiff seemingly takes issue with how the ALJ weighed this evidence, and she argues that the teacher's opinion should carry more weight because K.M.M. spends the majority of her day with the teacher. *Id.* The Commissioner responded that the ALJ appropriately considered K.M.M.'s teacher's opinion throughout her decision. ECF No. 22 at 10 (citing AR 19). Specifically, the Commissioner points to how the ALJ considered the teacher's opinion that K.M.M. had no problem playing cooperatively with other children, following the rules, and other observations that support finding that K.M.M. did not have a problem interacting with others. *See id.* (citing AR 19).

The opinion of a teacher is a nonmedical source. 20 C.F.R. §§ 404.1513(a)(4), 404.1502(e)(2). "Under the 2017 regulations, the ALJ is not 'required to articulate how [they] considered evidence from nonmedical sources' using the same criteria required for the evaluation of medical sources." *Nicole N.-M. v. Comm'r, Soc. Sec. Admin.*, 649 F. Supp. 3d 1025, 1040 (D. Or. 2022) (citing 20 C.F.R. §§ 404.1520c(d), 416.920c(d)). But the ALJ must nevertheless explain their assessment of lay-witness testimony. *Id.* To discount such testimony, the ALJ must give "germane reasons" for doing so. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

Here, the ALJ considered the teacher's opinion in evaluating the domain of acquiring and using information. AR 21. She noted that the teacher observed several serious problems in this area. *Id.* However, the ALJ also noted that the IEP "demonstrate[d] improvement, which was noted by Dr. Rubin" and that the "medical opinion evidence . . . supports less than a marked limitation in this domain." AR 22. The ALJ further considered the teacher's opinion in evaluating the domain of interacting with others. *Id.* She noted that the teacher observed problems with making and keeping friends and introducing and maintaining conversation. *Id.* However, the ALJ also noted that Dr. Valerie Tolbert opined that K.M.M. "did not have any limitations as to her ability to interact with others," and that Dr. Rubin found K.M.M. well behaved. *Id.*

1    Given the above, the Court finds that the ALJ gave germane reasons for discounting the

2    teacher's opinion as to the domain of interacting with others but not as to the domain of

3    acquiring and evaluating information. Regarding the domain of interacting with others, the ALJ

4    noted that the medical opinions of Drs. Tolbert and Rubin undermined the teacher's opinion.

5    Regarding the domain of acquiring and evaluating information, the ALJ explained that the IEP

6    and "medical opinion evidence" discounted the teacher's opinion. However, as explained above,

7    the IEP shows that K.M.M. struggled in school and that her "improvement" was from the first to

8    second percentile. AR 485. Moreover, the ALJ did not specify what "medical opinion evidence"

9    undermined the teacher's opinion. In sum, the Court finds that the ALJ did not err in discounting

10   the teacher's opinion as to the domain of interacting with others but did err as to the domain of

11   acquiring and using information.

12       5.   *The self-contained classroom*

13       Fifth, the Court agrees with Plaintiff that the ALJ erred by not explicitly considering that

14   K.M.M. was in a self-contained classroom. Plaintiff contends that the ALJ erred because, by not

15   considering that K.M.M. spent most of her time in a special-education classroom, the ALJ did

16   not properly compare K.M.M. to non-impaired children of the same age when evaluating her

17   ability to acquire and use information and interact with others. ECF No. 18 at 9–11. The

18   Commissioner responds that the ALJ did consider that K.M.M. spent time in a self-contained

19   classroom because the ALJ considered her "history of academic accommodations." ECF No. 22

20   at 12 (citing AR 19). The Commissioner further argues that Plaintiff put forth no authority to

21   show how being in a self-contained classroom influenced K.M.M.'s ability to interact with

22   others. *Id.* Plaintiff replies that, while the ALJ may have mentioned K.M.M.'s accommodations,

23   she did not explicitly consider that K.M.M. spent 71% of her day in a self-contained classroom

24   and ignored SSR 09-3p. ECF No. 23 at 4. Plaintiff cites numerous cases explaining that, when

25   comparing the claimant to non-impaired children of the same age, the ALJ should consider the

26   claimant's accommodations. *Id.*

27       Under 20 C.F.R. § 416.924a (Considerations in determining disability for children), the

28                                              12

1    ALJ:

2         will consider your need for a structured setting [including a special classroom] and the
          degree of limitation in functioning you have or would have outside the structured setting.
3         Even if you are able to function adequately in the structured or supportive setting, we
          *must* consider how you function in other settings and whether you would continue to
4         function at an adequate level without the structured or supportive setting.

5    *Id.* § 416.924a(b)(5)(iv)(C) (emphasis added). Plaintiff also cites SSR 09-3p.[3] The Ninth Circuit

6    has stated that "[i]f the ALJ finds that [the claimant] does not meet the original listing and

7    continues to the functional equivalence prong of the step three analysis, the ALJ must expressly

8    consider whether [the claimant] is in 'need [of] a structured setting and the degree of limitation

9    in functioning [she] ha[s] or would have outside the structured setting . . . .'" *Maines v. Colvin*,

10   666 F. App'x 607, 609 (9th Cir. 2016) (citations omitted).

11        Here, the ALJ did not consider K.M.M.'s need for a special-education classroom and

12   how she would function outside of that classroom. The ALJ did note that K.M.M. had special

13   accommodations at school, and she did mention K.M.M.'s special education teacher, but she

14   failed to mention that K.M.M. spent most of her time in a self-contained classroom or what kind

15   of assistance K.M.M. received in such a setting. AR 21; *see also A.B. on Behalf of Y.F. v. Colvin*,

16   166 F. Supp. 3d 512, 520 (D.N.J. 2016) ("[A]n ALJ cannot appropriately evaluate the effects of

17   Y.F.'s structured setting on his ability to function without identifying the nature of his structured

18   setting and the amount of help he receives from it.").

19        Moreover, the ALJ did not consider the degree of limitation in functioning K.M.M.

20   would have outside of her special-education classroom. Much of the evidence the ALJ cites to,

21   such as her improvement in math skills or lack of behavioral difficulties when interacting with

22   others, did not consider the specialized attention K.M.M. received in lectures or that the majority

23   [3] This rule explains that "school records are often a significant source of information about
     limitations in the domain of 'acquiring and using information.'" The rule goes on to say that
24   "[o]ther indications in school records that a mental or physical impairment(s) may be interfering
     with a child's ability to acquire and use information include, but are not limited to: [s]pecial
25   education services, such as . . . placement in a self-contained classroom." SSR 09-3p is binding
     on ALJs. *See Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S.Ct. 1532, 79 L.Ed.2d 878 (1984)
26   (explaining that Social Security Rulings are binding on all SSA decisionmakers*); Bray v.
     Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009) (holding that Social Security
27   Rulings "do not carry the 'force of law,' but they are binding on ALJs nonetheless").

28                                              13

1    of K.M.M.'s interactions were with other children in the special-education classroom. Therefore,

2    the ALJ did not properly consider whether K.M.M. would continue to function at an adequate

3    level without the self-contained classroom, particularly with regard to the domains of acquiring

4    and using information and interacting with others.

5          Even if an ALJ legally errs, courts should uphold the decision where the error is

6    harmless. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). An

7    error is harmless if it is "inconsequential to the ultimate nondisability determination." *Id.*

8    (quoting *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)). Here, the Court cannot say that

9    the ALJ's improper rejection of Plaintiff's testimony, the teacher's opinion, and the failure to

10   consider that K.M.M. was in a self-contained classroom for most of her day was inconsequential.

11   Upon proper consideration of these pieces of evidence, the ALJ could find that K.M.M. has

12   marked limitations in the domains of acquiring and using information and interacting with

13   others. When a court determines that an error was not harmless, it may remand or reverse. *Id.*

14         "Usually, if additional proceedings can remedy defects in the original administrative

15   proceeding, a social security case should be remanded." *Garrison v. Colvin*, 759 F.3d 995, 1019

16   (9th Cir. 2014) (internal quotations omitted) (quoting *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th

17   Cir. 1981)). If a court wishes to remand to award benefits, it must satisfy the credit-as-true test.

18   *Id.* at 1020. Under this test, the court must show that (1) the record has been fully developed and

19   further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to

20   provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical

21   opinion; *and* (3) if the improperly discredited evidence were credited as true, the ALJ would be

22   required to find the claimant disabled on remand. *Id.* (emphasis added). Here, the record has not

23   been fully developed because the ALJ did not properly reject Plaintiff's subjective testimony or

24   the teacher's opinion, and she did not properly consider that K.M.M. was in a self-contained

25   classroom for 71% of her day. Accordingly, a remand for further proceedings would be useful

26   for the ALJ to consider the above.

27   / / /

28                                                    14

## IV.   CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's motion for reversal, or in the alternative, remand (ECF No. 18) is GRANTED IN PART AND DENIED IN PART. The Court denies Plaintiff's motion as to her request for an award of benefits but grants it as to her alternative request for remand.

**IT IS FURTHER ORDERED** that the Commissioner's motion to affirm (ECF No. 22) is DENIED.

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to enter judgment in favor of Plaintiff and close this case.


DATED this 17th day of September, 2024.


_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE

15